Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2004     Decided November 12, 2004

No. 03-3048

UNITED STATES OF AMERICA,
APPELLEE

v.

TYRONE J. WEAKS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(01cr00425–01)

———

*James E. McCollum, Jr.*, appointed by the court, argued the cause and filed the brief for appellant.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher*, Assistant U.S. Attorney.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: A three-count indictment charged Tyrone J. Weaks with possessing with intent to distribute five or more grams of cocaine base (count 1) and with using, carrying and possessing a firearm in relation to that drug offense (count 2). Count 3 charged Weaks' girl-friend, Stephanie D. Conyers, with possessing cocaine base with intent to distribute it. Weaks lost his pretrial motion to suppress evidence found in his apartment and then entered a conditional plea of guilty to counts 1 and 2 pursuant to Federal Rule of Criminal Procedure 11(a)(2). In this appeal he argues that the district court erred in denying his suppression motion and in refusing to let him withdraw his plea before sentencing.

Weaks' objection to the search is on two grounds. The first is that a detective amended the search warrant after a judge of the Superior Court issued it. The typewritten body of the warrant does contain handwritten alterations. In a statement describing the entrance to the apartment building, a number is blacked out and replaced with "1649." It is most likely that the change corrected a typographical error. On the line above, the address is identified as "1649 W Street, Apartment #202," which is where Weaks resided; on the line below, "Apartment #202" is listed again. This, coupled with evidence at the suppression hearing that the handwriting was already on the warrant when the judge signed it, dooms any claim of irregularity.

Weaks' second point is that the agents did not leave a copy of the warrant at his residence, as Rule 41(f)(3)(B) of the Federal Rules of Criminal Procedure requires if a copy is not given to the person whose premises were searched. This claim fails for three reasons. One, the only evidence on point — the return on the warrant — stated that the officers left a copy of the warrant at the apartment. Two, Weaks did not properly raise a Rule 41 argument in this court: his brief contains only one sentence mentioning the subject; the sen-

tence is only in the summary of his argument; and it is not supported by any legal analysis, despite the undecided question whether a violation of Rule 41(f)(3) could justify a suppression order. *See* Fed. R. App. P. 28(a)(9). And three, Weaks waived the objection by failing to argue in the district court that a violation of Rule 41(f)(3) would support suppression of the evidence. *See* Fed. R. Crim. P. 12(e).

As to the argument that the district court should have permitted Weaks to withdraw his plea, the facts are these. Weaks and Conyers waived their right to a jury trial. A bench trial was set for April 11, 2002. One day earlier, the district court denied Weaks' motion to suppress and received assurances from both sides that they were ready for trial. On the morning of trial, Weaks entered his guilty plea. In the plea agreement, the government promised not to oppose Weaks' request for a two-level decrease in his base offense level for acceptance of responsibility, and "to dismiss Count Three of the indictment in this case at the time of defendant's sentencing" — that is, to dismiss the charge against Weaks' girlfriend, Stephanie Conyers, when the court sentenced Weaks. Conyers' attorney told the court that he had "a problem with that" part of the plea agreement, apparently because he did not want the charge against his client to linger. He added that he was ready to go to trial that morning. (The day before the court had expressed skepticism about the case against Conyers.) After the prosecutor said that waiting until sentencing to dismiss the charge against Conyers made sense because defendants sometimes withdraw their pleas, the court asked if the government was ready for trial. The prosecutor said that her position of the day before remained unchanged, to which the court replied: "All right. We'll go to trial. Call your first witness." The bench trial, which lasted an hour, resulted in Conyers' acquittal.

Four months later, before he was sentenced, Weaks moved to withdraw his guilty plea. His argument before the district court was the same as his argument before us — that he was entitled to this relief under the Federal Rules of Criminal Procedure and *Santobello v. New York*, 404 U.S. 257 (1971), because the government breached the plea agreement by

presenting its case against Conyers. The district court rejected the motion, stating that the "government was frustrated by the court, who forced them to go to trial," that "the court short-circuited any prosecution of" Conyers and that she "was acquitted of all charges before [Weaks] got out of the courthouse."

When Weaks filed his withdrawal motion, Federal Rule of Criminal Procedure 32(e) governed. The rule then provided that "If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." The hearing on Weaks' motion occurred in 2003. By then, the old Rule 32(e) had been eliminated, effective December 1, 2002, and replaced by Rule 11(d)(2)(B), which contains slightly different wording. It states: "A defendant may withdraw a plea of guilty or nolo contendere [before sentencing] if . . . the defendant can show a fair and just reason for requesting the withdrawal." Our decisions under former Rule 32(e) reviewed "a district court's refusal to permit the withdrawal of a plea before a sentence has been imposed only for an abuse of discretion." *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003) (citing *United States v. Cray*, 47 F.3d 1203, 1206 (D.C. Cir. 1995)). Although the new Rule 11(d) no longer contains the phrase "the court may permit the plea to be withdrawn," and although we emphasized the "may" in *Hanson*, the drafters of the new rule did not intend a change in meaning and did not mean to circumscribe the long-standing discretion of district courts in these matters. *See United States v. Cray*, 47 F.3d at 1206, and cases there cited. The Advisory Committee Notes to Rule 11 make this plain: the changes to Rule 11 were "intended to be stylistic only," unless otherwise noted. Just as changes in "phraseology" in the revision of the 1948 Judicial Code did not change a statute's substance, *see 3M Co. v. Browner*, 17 F.3d 1453, 1458 (D.C. Cir. 1994), stylistic changes in the Rules of Criminal Procedure do not alter their substance.

Abuse of discretion will therefore continue to be our standard of review. The question remains whether the govern-

ment violated its agreement with Weaks. The district court believed that its actions, not those of the prosecution, prevented the government from fulfilling its promise to Weaks to dismiss the charge against Conyers. Of this we have no doubt. It is no answer to say that at the moment the court ordered the parties to proceed to trial, the government could have dropped the charge. That would have deprived the government of its bargain. The agreement was to dismiss at the time of Weaks' sentencing, not before.

On the other hand, Weaks complains that he did not benefit from his bargain, which he describes as not having Conyers "placed in jeopardy of a trial. . . ." Brief of Appellant at 15. To the extent the plea agreement relieved Weaks of the anxiety of having his girlfriend endure a criminal trial and possible imprisonment, there is no indication that Weaks lost anything. Conyers' acquittal came not more than an hour after the trial began. Nothing suggests that Weaks suffered any anxiety during that hour or even knew her trial was underway. The district court suggested as much in denying the withdrawal motion.

The other benefit of Weaks' bargain was one he bestowed on Conyers. But Conyers' decision to go to trial rather than wait for the plea agreement to be carried out cannot be laid at the government's feet and did not amount to a breach of the agreement. If third party beneficiary principles applied, there still would be no breach. While Weaks relinquished his right to a trial, Conyers did not. It is black letter contract law that a third party "beneficiary is entitled to reject a promised benefit. . ." *see* RESTATEMENT (SECOND) OF CONTRACTS § 306, at cmt. & illus. b (1981), and that when this occurs, the "effect on the promisor's duty to the beneficiary is the same as if no promise had been made." *Id.* Thus when a "beneficiary" renders "performance [by the promisor] impossible, this . . . generally prevent[s] [the nonperformance] from being a breach of duty on the promisor's part to the promisee." 9 CORBIN ON CONTRACTS § 811 (interim ed. 2002). Conyers' decision to go to trial thus relieved the government of its obligation to Weaks to dismiss the charge against her at his sentencing.

We therefore hold that the district court properly rejected Weaks' motion to suppress and that the court did not abuse its discretion in denying Weaks' motion to withdraw his guilty plea.

*Affirmed.*